Right, we'll next hear United States v. Gaines, number 25-5000. Counsel, you may proceed. Mr. Casey. Justices and may it please the court, my name is Andrew Casey and I'm honored to be able to represent Mr. Gaines today. The question before this court is whether the district court improperly allowed Exhibit 4 to be admitted to the record despite Eric Williams not appearing to be confronted and cross-examined and despite the district court not properly analyzing whether good cause existed for the government to fail to produce Eric Williams as a witness. Because neither of those conditions exist, it was air to admit the exhibit and without the exhibit, the government failed to meet its burden by preponderance of evidence that Mr. Gaines violated his supervised release. I would ask for the court to reverse the district court judgment with instructions to dismiss. I'll move to the first argument, which is the actual statements themselves and whether the exhibit was improperly admitted under 32.1 BC2. And what I would note is that there are a number of cases from this circuit that I think squarely prevail in favor of the appellant. The first is actually a decision by you, Your Honor, Judge Matheson. It was United you and the panel had indicated that we would adopt the balancing test instead of the reliability test. In that case, there was a murder accusation, but a witness had refused to testify after giving a lot of statements to a detective, but there was no subpoena, no attempts to contact the victim to show up at the actual sentencing. And that evidence also contained quite a few different things in it, but that case led to a ruling where a district court had to be reversed and remanded based upon. I have two cases that I cited. Mr. Casey, could we back up a little bit? First of all, I take it you're not contesting that the statements at issue in Exhibit 4 would meet the requirements for an excited utterance under Evidence Rule 803. You're not challenging that? No, but I would also say that it did happen after he was detained, after 91 calls that Mr. Williams did not make, and after some period of time, at least eight minutes had passed. All right, so moving on, we get to Rule 32.1B2C. Does it apply to hearsay statements that are admissible under a hearsay exception? So it would apply, and confrontation for that adverse witness would still have to be protected, even if the hearsay statement itself was something that could be admissible at a trial. So what I would note is that the old reliability test said that you have to allow the hearsay evidence without cause regarding availability if it was sufficiently reliable, which isn't that different from sentencing. But for here, the balancing test that was adopted by Jones, that had been adopted from the 2002 amendments, makes it very clear that you have to assess the confrontation interest, and then you have to balance that with the good cause shown by the government. Counsel, that assumes that Rule 32 applies, and my question is, does it apply at all when you have hearsay that would qualify for a hearsay exception? I guess what I'm going for with this question, counsel, is it seems like this court hasn't addressed that specific question, and other courts have. So what should we do about that? I would indicate, Your Honor, and there's a couple of cases that I've cited that I think can apply to that answer. So I would note that here, you're still under the balancing test. Why don't you talk about your best authority? Is there a case that supports your position that you think we should follow? I would ask the court to look at page 23 of my brief. I've got two citations I want the court to consider from the Eighth Circuit. First is United States v. Timmons, which is 950 Fed Third 1047, and I want the court to consider United States v. Sutton, which is another Eighth Circuit case, 916 Fed Third 1134. In Timmons, there was a body-worn camera of an alleged victim after a 9-11 hang-up call, and the district court had admitted as an excited utterance. And the circuit court in the Eighth Circuit said that because the victim was in the same state as the proceedings, and the statements were corroborated except by a 9-11 call, that it had to be subject to the balancing test, and the government had failed to prove that the balancing test had protected the state. Here, the rule in 32.1 is plain that Mr. Gaines has the right to confront an adverse witness, which Eric Williams was at this point, based upon his statements. And under those two cases, I would indicate to you that there's significant authority to say that Rule 32.1 applies on that basic due process component. Does that answer that question? In your view, does... I'm sorry, please finish your answer to Judge Matheson's question. I think I finished it. I'm ready. In your view, how did the district court understand this video? Do you think the court thought it was hearsay that had to come within an exception? I mean, the district court gave a number of different rulings, it seemed, or thoughts about what this was. You know, excited utterance, a present sense impression, effect on the listener, things like that. So what is your understanding of what the district court's ruling is that we should evaluate that either triggers Rule 32 or the balancing obligations there, or does it? I'm looking at the record from Volume 3, pages 42 to 44, which is the discussion with the district court, where it analyzes just the reliability of the hearsay statements. That, to me, left the impression that the district court evaluated this as one would have the reliability test that was under KEL before we had United States v. Jones. Well, that actually makes me wonder about something else, and it's a much more antecedent question about preservation here, which the government hasn't raised, and maybe for good reason. But Jones was available to you at the time that you were making this objection, and you cited to the district court, you know, we object under Rule 32 and Morrissey and 10th Circuit law, but you didn't focus the district court on Jones. And Jones is really the case that understood what the advisory committee notes were all about, that this was a shift from reliability to this balancing test. So, without mentioning Jones to the district court, why should we think the district court was on notice about what its obligations were under Jones? Because Rule 32.1b2c was specifically cited, and that was the rule specifically recognized in Jones. And I don't think that raising Jones at that moment would alleviate the fact that the statutory authority and how the 2012 amendments happened was not raised and presented to the court. And in that, then the discussion of what in the interest of justice requires for whether or not that happens. The rest of the analysis that is there, it's all related to that part of it. So, that's what leaves me with the impression that the error is preserved as far as that goes. Let me ask you a quick question. What would be the outcome of your case if the district court had done everything exactly like he did, but at the end of the colloquy, when he was getting ready to overrule your objection, he said, I have balanced all of these factors under Rule 32.1 and deny your motion? I think that the case, I'm sorry. Go ahead, no. The case law is very clear that simply mentioning the analysis, simply mentioning that you went through balancing is not enough to conduct balancing. And here, the record shows significant information to you about how there was discussions about how the witness was uncooperative, but there was nothing to suggest that he was under subpoena, that the subpoena would be futile, that there was anything that was done as far as it goes. And so, I would say that the judgment was still incorrect, even if he mentioned the balancing test at the end. I guess the problem I'm having is what happened at the court, and I'm not, I don't know if you were trial counsel or not, I'm not faulting anyone at trial at the district court because it's fast and furious, but it seems like what happened is it was like, I object under Rule 32.1 because I want to confront the witness, I want to cross-examine them, there are a lot of questions I would like to ask, period. But nobody suggested to the district court that the method he used to analyze this was wrong. And maybe the distinct point that you wanted to cross-examine and confront the witness was made, but nobody, nobody suggested that the district court had not engaged in balancing at that point. I would indicate, Your Honor, I think that one of the statements that you said is precisely my viewpoint from having been in the room, which is that we're working through, and Your Honor was, is very fast, he's very direct, and I'm answering questions, and we are moving on very quickly before we get the overrule of the objections. And so, I tried to note that I had issues with the accuracy of the statements that I wanted to cross-examine on, that Rule 32.1 had to be preserved, and I think even the way that that happened was, there was an attempt to admit another exhibit, I had noted that I was going to make that objection, we kind of slowed down, and then I made the objection, and it went very quickly after that. And so that, I think that the error was preserved as far as 32.1 goes, except that he had indicated that he thinks that justice, that the district court thought justice so required the overrule, and on that, I don't think that there's enough information to confirm that, and I do believe that that was the error, too. Counselor, can I just, sorry to interrupt, but without, let's say we agree with you, and Exhibit 4 is out, apart from Exhibit 4, why didn't the evidence show by a preponderance, I'm talking about the remaining evidence, that Mr. Gaines possessed a firearm and shot Mr. Williams? Thank you, Your Honor. I think that Officer Awad's testimony, and even the exhibits themselves, all leave significant concerns about whether they've met the burden under preponderance of evidence. For instance, Officer Awad, whenever he discusses the exhibits where there was a claim to see something in Mr. Gaines's hand, had indicated he has no idea what that object is, and there was nothing further as far as it goes. There was a holster inside a car, and there was no indication that that holster would fit the particular weapon in the case. There are iron sights, but I think that I have a unique problem with the iron sights, because one, iron sights on a handgun are just not something you can take off on a quick measure, and there's two of them in two separate rooms, and I think that the cross-examination of Officer Awad said, this is for an AR, and most certainly there's no indication that anybody was shot with an AR, so the iron sights don't confirm anything as well, and then there's just an empty box that has an ammunition label on it, but there's no other portions of certain parts that are there. Mixed with the statements from Mr. Gaines denying it, there's just nothing to corroborate it besides what's in Exhibit 4, and so that's... Just to clarify though, is your answer the same if you break it into possession of a firearm on the hand and the shooting on the other? I believe so. Your argument seemed to go more to the shooting part than whether there was enough to show possession. That's true, but I have one other good argument that also goes to possession, and I think those other ones do speak to possession. I would note for the court that with the testimony from Officer Awad talking about Mr. Gaines being intoxicated, and with no one corroborating any idea that a gun was handed off or that Mr. Gaines had run away and hid it, and with two things from law enforcement, the quick reaction to get to the scene, and then the thorough search of the area, none of which produced a firearm at all, there's just no evidence that corroborates that he had a firearm at that time. It's mere speculation based on items in a truck, and they have no evidence to say that he went near the truck at that time, and then iron sights that have no relevance to fitting a particular firearm, and so the old adage that there's smoke, there's fire, we don't have smoke as far as this goes. What we just have are things that wouldn't surpass and won't survive the ponderance of evidence, and that's also why I think that this is not harmless error as well, simply because if Exhibit 4 is out, they just haven't met the burden to show that he possessed a gun or that he shot somebody with it, and I think that the evidence is that, and I think that's ultimately why cross-examination of Mr. Williams was so important, because it got to the ability to test his accuracy, test his viewpoint, bring up things like his criminal history, his level of intoxication, whether he's lying about Mr. Gaines, whether he's protecting somebody else, all of these would be fair game. Judge Matheson? Judge Carson? Would you indulge me one quick question? Oh, please, please, I'm anxious to hear it. You'll probably regret it. So, I may be remembering this wrong, but I seem to remember testimony in the record from the officer that he understood from the other officers that the defendant admitted, or that the victim said the defendant shot him. Do you recall that testimony in the record? There was a, the way that I remember it was when he was being explained the call-out, there was a discussion that Williams was shot, as far as what was related to him to show up to the scene, and that they had a suspect, but I don't remember getting to a point where there was an actual statement that this is the shooter, and then, of course, they had Mr. Williams detained at the scene, whenever the body camera officer, which was an officer. That's fine, I don't want to drag, I don't want to make you drag on there. I just had a discreet question, and it sounds like I'm just going to have to get back in there and take a look. Thanks for trying to answer that, though. Thank you, Your Honor. Thank you, Counsel. Counsel, I think your time is up, and we're going to move over to Mr. Anderson. It flies by, Your Honor. Thank you all so much. Thank you. Mr. Jones, please. Please, the court. Elliot Anderson for the United States. I'd like to begin with answering Judge Matheson's question, and to that, I will say that I'm not aware that the Tenth Circuit has ever held that Rule 32.1b-2c can exclude otherwise admissible hearsay from a revocation hearing. In Jones itself, the hearsay would not otherwise have been admissible. The victim or the witness had spoken with the detective, and then was unavailable, and the detective was going to take the stand and repeat what had been told to him. That would not have been admissible at trial. The other cases that the appellant relies on largely involve cooperative witnesses that the government did not work hard enough to get to trial. They largely do not involve otherwise admissible hearsay, and the Tenth Circuit certainly is not. The second reason I think this is the correct answer is that it would be error. Counsel, I'm not sure. Let me throw out that it seems like there are other circuits that have addressed this issue, but I think there's a circuit split. Are you seeing a circuit split on that issue? I see cases coming out either way. I don't know that I've seen a lot of cases directly phrasing the question in those terms and answering it. I think the better answer, though, is that Rule 32.1 cannot be read to make the standard of admissibility more restrictive at a revocation hearing than it would be at trial. It would be error to read Rule 32.1 under Jones and under all of this court's precedent on revocation, which all acknowledge that a defendant at a revocation hearing is not a criminal prosecution. They do not have the full monopoly of trial rights, but then to read Rule 32.1 to exclude an excited utterance that would come in trial, regardless of the declarance of inability, that is a misreading of the rule. Third, two. Well, counsel, I don't see anything in the rule that speaks to this at all. It says the defendant is entitled to an opportunity to appear, present evidence, and question any adverse witness. It doesn't say anything about hearsay, exceptions to hearsay. It just says that the defendant's entitled to do that. So I don't see, based on the text of the rule, an answer to this question about if we have an excited utterance here, does it really matter? He still has an interest in cross-examining Mr. Williams. The rule goes on to say, Your Honor, if I'm recalling correctly, unless the judge determines that the interests of justice don't warrant cross-examination. Well, that gets us to the balancing test, right? The balancing test that appears in the advisory committee note. Well, doesn't that, doesn't the advisory committee note about the balancing test relate to that portion of the rule? It does, Your Honor. Okay, and if the rule does apply, we said in Jones, as Mr. Casey pointed out, that just mentioning the rule isn't enough. Just mentioning balancing isn't enough. So how did the district court here actually apply the balancing test? Three ways, Your Honor. First, the court examined the reliability of the evidence, which Jones says is very important, and here the evidence was extremely reliable. Mr. Williams in Exhibit 4 is excited under the stress of the moment and had been shot somewhere between five and ten minutes earlier. Second, the court quizzed defense counsel on why exactly did he need to cross-examine this witness. The district court directly engaged on that point, and defense counsel's only answer was the reliability of the statements. He did not contest that Mr. Williams said what he said. Now, as to the reliability of those statements, those are baked into the circumstantial guarantees of trustworthiness in the hearsay exception. The third reason, and this goes to Judge Rossman's question, is that defense counsel conceded at the that Mr. Williams was uncooperative and unavailable for testimony. So Officer Awad testified, I attempted to contact him repeatedly after the incident. He was uncooperative. Defense counsel not only didn't object to that, defense counsel at Volume 3, page 39, says on the record that he understands Mr. Williams is uncooperative. It would have been a meaningless exercise, and it would be a meaningless exercise to remand just so that the judge could say the magic words, I have heard both sides agree that the witness is uncooperative, and now I understand that the witness is uncooperative. That part was implicit in the holding. A lot of accounts, a lot of witnesses are uncooperative, but you subpoenaed them in. Did the government subpoena Mr. Williams? I could not find a case, Your Honor, where the government has been required to subpoena. Well, I didn't ask that question. To my knowledge, they did not. All right. To my knowledge, they did not. And the cases that were cited in both briefs that faulted the government for not subpoenaing a witness, all involved cases where the witness had cooperated. So in Zentgraph, in Timmins, in Sutton, in Coleman, the witness had spent hours talking to law enforcement, and then law enforcement didn't subpoena them. In contrast, in Williams, they made multiple attempts to contact the witness and could not, and the court excused the witness's presence. In Carter, the witness obviously would have refused to testify. And in Martin, the witness refused. The district court did not explicitly address the availability of the witness, but the Eighth Circuit said there's enough evidence in the record for us just to do the balancing ourselves. The government clearly had a good reason for not presenting a witness who would not and never had cooperated. That is the distinction in the cases as I see it, Your Honor. But the district court here never factored in its decision-making, the unavailability of this witness, right? There would be no reason to, Your Honor, because no- Well, that's the separate- There may not have been a reason to, but just to, just descriptively, the district court didn't address that piece of the analysis. Is that fair? The district court did not repeat what both counsel had said, yes, on that point. As to the harmlessness of the error, the district court, before it reached its holding, deliberately scaffolded the evidence up. It said, some of this makes me start to think, some of this makes me begin to wonder if the evidence is starting to mount. And the court said, and I find it pretty overwhelming, and the court said that before it even discussed Exhibit 4. So setting Exhibit 4 aside, there was ample evidence for a reasonable trier effect to find that more likely than not, Craig Gaines shot Eric Williams. Counsel, what is the harmless error standard that the government contends applies here? We've not decided that question about whether errors under this rule are considered to be constitutional or non-constitutional harmless errors. So what is your position on that? I think the better answer, Your Honor, is that it's non-constitutional because the cases are in agreement that at a revocation hearing, the confrontation right isn't a pure confrontation clause right. It comes from the Fifth Amendment, not the Sixth. So I think you would be over elevating the standard here to hold that this is a constitutional error when Mr. Gaines is not asserting a constitutional right. He's asserting a right under Rule 32.1. Is the balancing test that the rule requires coextensive with Morrisey? I would say no, Your Honor, because this isn't a full... The courts that have examined this, I believe I cited a Fourth Circuit case and a Seventh Circuit case, point out that the confrontation right at a revocation hearing is not on all fours with Morrisey. It's something less than that. I believe that's the better holding here. Because again, we should be... It should be easier to get reliable hearsay at a revocation hearing than it would be at trial. And here the district court said this would be admissible at trial more likely than not. And I saw no reason not to admit it there. But setting that aside, so there's not a substantial likelihood that Exhibit 4 had a prejudicial outcome on the effect because what the court saw is in Exhibit 1, Craig Gaines standing at Eric Williams' door with an object in his hand. It is small and metallic. Is it undeniably a gun based on that video? No, but it is undeniably not many other things. It's undeniably not a box of Girl Scout cookies or a pan of brownies or even a slingshot. It is the size and shape of something that's consistent with the other points in the narrative. Because witnesses told police they saw Gaines and arguing in the parking lot and one of them pulled a gun on the other one. And in Exhibit 2, we see Mr. Gaines raise his arm toward Mr. Williams, that arm that is holding something that's not a box of cookies. And Mr. Williams spreads his own arms and says, are you going to shoot me? Because... And then at that point in the analysis, the district court paused and noted the other evidence. The small holster in Gaines' truck, the firearm accessories in his apartment, the small caliber ammunition box outside his apartment, the empty shell casings in the parking lot where he'd been arguing with Williams. And the judge says, and lo and behold, Eric Williams shows up getting shot. At that point in the evidence, even without Exhibit 4, it would not be arbitrary, capricious or whimsical for a fact finder to conclude that the man who's holding... But that's like a different standard, right? I mean, we're not... If you're arguing now under harmlessness, could you be just as precise as possible about two things? The first is you maintain that it's the non-constitutional harmlessness standard, and I think you've effectively explained why that is so. What is precisely the question that we are addressing under that standard in this case? Your Honor, whether we decide that it's non-constitutional or constitutional, the government can prove beyond a reasonable doubt that the error is harmless, because we only need enough facts for a reasonable trier of facts to conclude, more likely than not, Mr. Gaines held a gun, pointed it at Mr. Williams and shot him with it. And there is ample evidence in the record before we get to Exhibit 4. And that, I think, is evidenced by the court's own analysis where he walks through it deliberately and says, Exhibit 1, Exhibit 2, the physical evidence, the witness statements. It's not just coincidence, lo and behold, that Mr. Williams got shot. He got shot by the person who was pointing something at him, something that is about the same size and shape as a gun. Counsel, wasn't there evidence that there were other people there? It wasn't just Mr. Williams and Mr. Gaines when this incident occurred, correct? There were... Yes, Your Honor. There were multiple people who witnessed parts of the incident and there were no witness statements and no physical evidence implicating any third party in the shooting. There's nothing in the record at all to cast suspicion away from Mr. Gaines. We're discussing the sufficiency of the evidence that supports the ultimate decision to revoke. And I thought our question on harmlessness was directed to whether the court would have admitted the exhibit under the Rule 32 balancing test on the record before it. Isn't that a different question? I apologize for misunderstanding your question. When I spoke to harmlessness, what I meant is that the admission of Exhibit 4 is not what tipped the scales, so that even if it was error for the court to admit it, the court would have reached the same decision. A reasonable fact fire would have been justified in reaching the same decision without Exhibit 4, just based on everything that came in before that. As to the harmlessness... I mean, this is the formulation in Jones. The formulation in Jones is we have great, grave doubt as to whether the court would have admitted the testimony under the Rule 32 balancing test on the record before it. And if that's the way the formulation of harmlessness in Jones, if we apply that here, and I think that that calls for us to look at a different set of data points. I understand your question now. Let me try to rephrase. If someone had objected to trial and said, Your Honor, you're applying the wrong test, or you haven't done all the balancing. You've talked about reliability and interest in cross-examination, but Judge, you didn't say anything about the availability of the witness. I don't think there's serious doubt that the judge would have said something to the effect of, Everyone agrees the witness is uncooperative and wouldn't testify against Mr. Gaines. It would have been one additional sentence that wouldn't have changed the outcome. So here, I don't think we have that grave doubt. It's just, if there's an error at all, it wasn't raised below, but factually, the point was uncontested. If there are no further questions, we request that this court affirm. Thank you. Thank you, counsel. I believe we're out of time for Mr. Casey, so we will consider the case submitted. We thank you for your arguments this morning. Thanks for cooperating with the Zoom. You weren't expecting to be on Zoom, and neither were we, but it seems to be working out okay, so thanks for that. We'll excuse both counsel and move on to the next case.